## OLYMPIA WERKE AKTIENGESELLSCHAFT, Appellant,

v.

## GENERAL ELECTRIC COMPANY, Appellee.

### No. 82–1651.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1983.

Decided July 6, 1983.

---

4. *Holsey v. Bass,* 519 F.Supp. 395, 396 (D.Md. 1981).

Arthur D. Gray, New York City (Hugh A. Chapin, Thomas L. Creel, Kenyon & Kenyon, Washington, D.C. on brief), for appellant.

Edward F. McKie, Jr., Washington, D.C. (Joseph M. Potenza, Schuyler, Banner, Birch, McKie & Beckett, Washington, D.C., on brief), for appellee.

Before RUSSELL, SPROUSE and CHAPMAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is a patent infringement suit brought by the plaintiff Olympia Werke Aktiengesellschaft[1] (Olympia) against the defendant General Electric Company (GE). After some discovery, GE moved for summary judgment in its favor on the ground of laches. The District Court held that the motion "should be denied" at that time, since it concluded that the issue of laches could best be resolved on a more complete record, developed at a trial. It accordingly ordered "a separate trial . . . on the issue of laches."[2] On the record made on that separate trial the District Court made extensive and detailed findings of fact and conclusions of law and granted "final judgment . . . for the defendant on the basis of laches" and ordered the "case . . . stricken from the docket of this court."[3] Olympia appeals from that judgment. We affirm.

1. Olympia is a wholly-owned subsidiary of Allgemeine Elektricitaets-Gesellschaft AEG–TELEFUNKEN (AEG).

2. *Olympia Werke Aktiengesellschaft v. General Elec.,* 470 F.Supp. 966, 968 (W.D.Va.1979).

3. *Olympia Werke Aktiengesellschaft v. General Elec.,* 545 F.Supp. 598 (W.D.Va.1982).

In granting judgment in favor of General Electric under "the label"[4] of a finding of laches and in dismissing the action "in toto,"[5] the District Court found (1) that Olympia had been guilty of unreasonable and inexcusable delay in asserting its claim, (2) that such delay exceeded the statutory six years[6] and was presumed to have been prejudicial, and (3) that, General Electric had shown actual prejudice in a number of particulars. In further explication of its finding of actual prejudice, it added a number of additional findings. First, it found that important witnesses had died and that the memories of others had dimmed during the period of Olympia's delay in the assertion of its claim. Of greater importance to the defendant's defense, the District Court found expressly that Olympia had, by its conduct, indicated very clearly an abandonment of its patent and a disinterest in its exploitation. It further found that Olympia, after full knowledge of GE's alleged infringement, stood mute and allowed GE to proceed with large expenditures in effort and money with the development and marketing of its patent in the reasonable belief that it would be unmolested by Olympia. Finally, it found that it was only after it became evident years later that GE had achieved considerable success with its patent, did Olympia assert for the first time any claim of infringement. On the basis of these findings, the District Court granted judgment in favor of the defendant and ordered the dismissal of Olympia's action "in toto."

Olympia, by its appeal, contends that these findings, as made by the District Court, are not supported by substantial evidence but that, if they are, they would only bar its infringement claims accruing prior to the commencement of negotiations on October 21, 1974. This, it argues, is because, as a matter of law, a finding of laches bars recovery solely for past infringement and that a finding of estoppel is essential to bar recovery of future damages or to authorize dismissal "in toto." It accordingly urges error in any event in the denial of damages after October 21, 1974 and in the dismissal of its action. The resolution of these contentions of Olympia entails a consideration of the elements of laches and estoppel, the evidence required to establish each, the consequences of their separate establishment, and, finally, whether the record in this case supports the establishment properly of one or both of such defenses. We accordingly proceed, first, to consider the elements and consequences of the two defenses.

■ The doctrine of laches as a defense in an infringement case " 'may be invoked where the plaintiff has unreasonably and inexcusably delayed in prosecuting its rights and where that delay has resulted in material prejudice to the defendant.' " *Potter Instrument Co., Inc. v. Storage Technology,* 641 F.2d 190, 191 (4th Cir.1981).[7]

---

**4.** *See Continental Coatings Corporation v. Metco., Inc.,* 464 F.2d 1375, 1380 (7th Cir.1972) ("... an estoppel defense ... under the laches label ....)

**5.** *See Advanced Hydraulics, Inc. v. Otis Elevator Company,* 525 F.2d 477, 479 (7th Cir.1975), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (... the infringement suit must fail "in toto ....").

**6.** There is some discussion by Olympia on the exact delay chargeable against it under the plea of laches. It agrees with the District Court's finding that the commencement date for the calculation of the delay was the date of Olympia's imputed knowledge of infringement by GE dated October 4, 1968. It would however fault the District Court's finding of the date on which the calculation under the statute should end. The District Court found this ending date

to be April 19, 1977, when suit was begun. It is Olympia's position, however, that such ending date was properly October 21, 1974, when allegedly good faith settlement negotiations began. It cites *Mogavero v. McLucas,* 543 F.2d 1081, 1083 (4th Cir.1976) for this position. It is unnecessary, however, to pursue this argument because, as the District Court held, the six-year statutory period was exceeded even if the termination date urged by Olympia is accepted and Olympia seems not to dispute this fact.

**7.** *See also, Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1326 (5th Cir. 1980).

In this case the Court said that, in order to prove laches, "two elements must be established: (1) that the delay was unreasonable or inexcusable; that the defendant has suffered injury or prejudice as a result of the delay."

However, [w]here the plaintiff's delay has exceeded the statutory six-year period, the delay is presumed unreasonable, and the plaintiff has the burden of justifying the delay. Similarly, when the delay exceeds six years, injury to the defendant is presumed, and the defendant need not necessarily produce additional evidence of prejudice." *Id.,* at 1326; *Dwight & Lloyd Sintering Co. v. Greenawalt,* 27 F.2d 823 (2d Cir. 1928). Although laches and estoppel, as asserted in an infringement claim, are related concepts, with considerable similarity in the required proof, they have important differences. Thus, there is this difference in consequences between the two concepts: laches "only bars recovery of damages for past infringement, estoppel forecloses, as well, prospective patent enforcement through an injunction or through damages for continuing infringement." *Potter Instrument, supra,* 641 F.2d at 192.

■ And, while estoppel includes all the elements of laches, its establishment requires proof of an additional element. To elevate the proof beyond the level of laches to that of estoppel, the infringer must establish " 'representations or conduct [on the part of the patentee] which justify an inference of abandonment of the patent claim or that the plaintiff has induced the [alleged] infringer to believe that "its business would be unmolested" ' " and that the defendant has acted upon such inference to his detriment. *Naxon Telesign Corp. v. Bunker Ramo Corp.,* 686 F.2d 1258, 1266 (7th Cir. 1982); *Jensen v. Western Irr. and Mfg., Inc.,* 650 F.2d 165, 169 (9th Cir.1980); *Advanced Hydraulics, Inc. v. Otis Elevator Company, supra,* 525 F.2d at 481; *Continental Coatings Corporation v. Metco, Inc., supra,* 464 F.2d at 1379–80. Unlike in proof of laches, prejudice or detriment may not be established on the basis of a presumption arising from delay beyond the statutory period but actual prejudice or detriment must be proved by the alleged infringer. *Naxon Telesign, supra,* 686 F.2d at 1264–65. The most common way this additional element is supplied is by proof that, after the patentee has by its conduct justified an inference of abandonment of its patent

claim or has led the defendant to believe its business "would be unmolested," the defendant has " 'proceeded to make substantial investments in its business ... and [that] its business grew extensively.' " *Id.,* 686 F.2d at 1267.

■ Whether laches or estoppel is to be invoked under the facts of the particular case and under the standards of proof stated *supra* "is within the sound discretion of the district court and will be reversed only if clearly erroneous." *Potter Instrument, supra,* 641 F.2d at 191.

In assessing whether the District Court has properly exercised its discretion in invoking either laches or estoppel as a defense, the modern appellate rule seems to be that the Court should look to the findings rather than to the label, whether of laches or estoppel which either the District Court or the parties have assigned to the defense. Thus, even though the defendant has pled as its defense only laches and the District Court has phrased its decision under "the label" of laches, modern appellate authorities have affirmed the dismissal of the action in toto and have "consistently denied the patentee any relief if the evidence of unreasonable and unexcused delay also disclosed that the patentee's conduct had encouraged the belief that the infringer's business would be unmolested." *Continental Coatings Corporation v. Metco, Inc., supra,* 464 F.2d at 1379–80. *To the same effect see: Naxon Telesign Corp. v. Bunker Ramo Corp., supra,* 686 F.2d at 1266; *Jensen v. Western Irr. and Mfg., Inc., supra,* 650 F.2d at 168; *Advanced Hydraulics, Inc. v. Otis Elevator Company, supra,* 526 F.2d at 479.

Illustrative of these authorities is *Continental Coatings.* In *Continental Coatings,* the grant of summary judgment was based on "the defense of laches" and one of the grounds of appellant's claims of error on appeal was similar to that asserted by Olympia in this case; *i.e.,* that "laches should not foreclose injunctive relief or the recovery of damages subsequent to the filing of the complaint." 464 F.2d at 1376.

In considering such claim of error, Judge (now Justice) Stevens stated as the modern rule, which we earlier had paraphrased: modern authority had "consistently denied" any relief where the proof, whether after trial or on the record on motion for summary judgment, showed that patentee had, by word or conduct, reasonably induced the defendant to assume he would be "unmolested". Justice Stevens added, in further explanation of this rule that "[i]n some instances [where the rule had been followed] the court failed expressly to mention the term estoppel, but in each case all relief was denied the patentee," as in estoppel. 464 F.2d at 1380. Since the proof in that case met the requirements of an estoppel and "all relief was denied the patentee" by the District Court, the Court of Appeals affirmed by "accepting an estoppel defense . . . advanced under the laches label." 464 F.2d at 1380.[8]

■ Accordingly, if the District Court's findings of fact embrace all the elements of an estoppel as stated in *Naxon, supra* and *Continental Coatings, supra,* and those findings have substantial support in the record a dismissal of the action, whether under a holding of an estoppel or, as in *Continental Coatings,* an estoppel tagged with a "laches label", should be upheld on appeal. Of course, if the findings are not adequate but there is "some evidence of misleading conduct" on the part of the patentee, the proper disposition on appeal of the cause is a remand "for a consideration of whether estoppel bars [the patentee's] claim for prospective relief." *Jensen, supra,* 650 F.2d at 169. It follows that in every appeal of an infringement case where the defense of laches or estoppel or both is in issue, the Court should review the record for laches and for estoppel separately and resolve the appeal on whether the proof establishes estoppel or simply laches or neither estoppel nor laches. *See Naxon, supra,* 686 F.2d at 1264.

We accordingly address the proof in this case in order to determine whether GE has established an estoppel or, if not estoppel, laches. As an introduction to a discussion of the proof on these questions, a general statement of the facts giving rise to this suit appears in order. The starting point in any such review is Olympia's patent which it claims to have been infringed by GE. This patent was developed by an inventor in the employ of Olympia named Hense in the late 1950's. Application for patent was first filed in Germany in 1957 and in the United States and other countries in 1958 and for which patent issued in 1960. After

---

8. In all of the other cases cited, the defendant had stated its defense in terms of laches and the parties had tried the cause seemingly on that basis. Thus, in *Naxon,* the Court began its discussion of the District Court's decision by observing that "both parties characterized 'defendants' principal patent infringement defense as one of laches rather than estoppel'", 686 F.2d at 1261, but the Court affirmed the grant of "summary judgment in favor of Bunker Ramo on estoppel grounds", 686 F.2d at 1267. In *Jensen,* the defendant also stated its defense as in laches and the District Court dismissed the "infringement action due to laches." The Court, however, remanded, saying (650 F.2d at 167):

"... The finding of laches is fully supported and we affirm the dismissal of Jensen's claim for past damages. In order, however, to support a dismissal of Jensen's request for prospective relief, there must have been an additional showing of conduct by the patentee justifying reliance, by the alleged infringers, on the assumption that Jensen did not intend to enforce his patent against them. The court below did not consider whether the defendants-appellees made such a showing of estoppel in this case. We remand the matter for a determination of whether Jensen should be estopped from receiving prospective relief."

*Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315 (5th Cir.1980) is another case in which the defendant relied only on laches. Even though this was the plea, the Court on appeal examined the record both for laches *and estoppel.* Citing *Continental Coatings,* however, the Court dismissed estoppel as a defense, because it could "find no misleading conduct by SGK" in that the patentee had not "made representations or engaged in conduct which justifies an inference of abandonment of the patent claim or which has induced the infringer to believe that its business would be unmolested." 616 F.2d at 1330. In other words, the Court recognized the rule that the Court would look to the findings of fact to determine whether the record established estoppel but found that facts sufficient for such finding did not exist in this case.

some active promotion of the patent, Olympia discontinued any attempt at marketing its printer and abandoned its patent everywhere but in the United States in 1962 or 1963. The reason for such abandonment was stated officially in Olympia's record to be that it "*no longer had any interest in maintaining patents on the line printer* and wished to avoid the need for continued payment of substantial annuities. The U.S. '704 Patent was not offered to Hense or abandoned since no annuities [in the United States Patent] needed to be paid." (Italics added).

In 1967, GE developed and patented its TermiNet printer, which apparently had some similarity to Olympia's patent. It began actively the manufacture of such printer and the negotiation of licenses with others for the use of its patent both in the United States and abroad. Beginning in early October, 1968, negotiations were instituted with Olympia. These negotiations continued for several years. During the time these negotiations were taking place, GE was aggressively pursuing the marketing of its printer both in the United States and abroad. In the course of such effort it expended considerable sums of money and a great deal of effort. Its efforts were quite successful. All of this was known to Olympia. On October 21, 1974, Olympia first raised with GE the issue of infringement. It was not, however, until April, 1977 that Olympia filed its suit herein. As we have already stated, the District Court, after a full trial, dismissed the action "in toto" under a finding expressed under the "label of laches." That dismissal is the subject of this appeal.

█ The finding of laches in this case is fully supported under the principles and standard of proof set forth earlier. There was, for instance, delay in asserting a claim of infringement beyond the statutory six-year period after knowledge of the infringement. Delay of such length is presumed to be both unreasonable and prejudicial. Olympia's excuse for its delay was an odd claim that it was ignorant of the existence of its patent for many years before it

first asserted its infringement claim. There was, it is true, evidence that Olympia had in 1963 or 1964 abandoned its patent and discontinued any effort to exploit it. This, however, is a far cry from proving that no one in authority in its offices knew of the patent. Many of the people in Olympia or in its corporate parent's organization who had taken part in the early attempt to exploit the patent were still in Olympia's or its parent's employment in executive positions during the period when Olympia claims GE was infringing. In fact, one of these officers had written and published in industrial journals in 1962 and 1963 descriptions of the patent and was among the group of Olympia officials who participated in reviewing with GE officials GE's teleprinter in the period from 1968 to 1972. The District Judge, also, identified others in the executive organization of Olympia and/or its parent with responsibility in the area who knew both of Olympia's patent· and of GE's patent. All of this was painstakingly covered in the District Court's findings. These and other specific findings amply justify the District Judge's conclusion that Olympia's excuse for its inaction was not tenable and that laches barred any claim for damages by Olympia at least prior to the date when negotiations began between the parties on October 21, 1974.

█ Olympia's primary objection to the decision, however, relates to the denial of all relief, including future or prospective damages, and the dismissal of its action "in toto." Its position is that such relief was only available if there has been a finding of an estoppel and that, at least, *in haec verba,* the District Court did not find an estoppel. However, this position is contrary to what was held in *Continental Coatings, supra,* 464 F.2d at 1380, *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008 (7th Cir.1970), and *Jensen, supra,* 650 F.2d at 168. In fact, it is suggested in *Continental Coatings* that it may be assumed ·that the District Court was dealing with estoppel in the case because of the relief it granted, *i.e.,* it "directed that the entire suit be dismissed." We need not rest

our decision on this, however, under *Continental Coatings* and the other cases cited *supra*, the modern rule is that dismissal of an infringement action in toto is in order if the District Court has found on adequate evidence all the elements of an estoppel. Whether the District Court correctly dismissed this case and granted judgment absolute in favor of GE depends on whether, under the District Court's findings, the elements of an estoppel were properly established.

There can be no dispute that Olympia has been guilty of unreasonable and inexcusable delay. Moreover, the District Court found—largely on Olympia's own evidence—that Olympia had in a very unmistakable way abandoned its patent. The evidence cited by the District Court showed that Olympia made no effort to assert or use its patent either in manufacture of its printer or in licensing others after about 1963. All of this was a matter of public record. GE knew of Olympia's patent but it regarded it as invalid on the basis of its patent attorney's opinion. It also undoubtedly knew of the steps Olympia had taken to abandon it. Later, when GE had completed its development of its patent and had begun to exploit the patent, it made a complete disclosure of its patent to Olympia and the latter's parent corporation. Olympia asserted no claim of infringement at the time. On the contrary, it entered into negotiations with GE with reference to a license to manufacture under GE's patent. After these negotiations had gone on for more than a year, Olympia decided against taking a license under GE's patent not because it thought its patent was being infringed and wished to assert such claim but because it doubted the economic feasibility of such a venture. Subsequently, GE made an improvement to its patent. When Olympia learned of this, it reopened the negotiations for a license under GE's patent. To assist Olympia in determining whether to take such a license, GE at Olympia's request, sent one of its patented machines to Olympia for review by Olympia's engineers in 1971. There was no suggestion on Olympia's part of a claim of infringement,

though it did, after some further discussion, again determine, on economic feasibility grounds, not to take a license. It was, however, almost four years after all this that Olympia first intimated that it might claim infringement.

In the period from 1967 to 1974, when Olympia first claimed infringement, GE had engaged at great expense in an aggressive program of exploitation of its patent. It built a plant for the construction of its patented machine. It developed a marketing organization. Its investments ran into many millions of dollars. It experienced considerable success with its patent. All of this was well known to Olympia. All of these facts are incorporated in the findings of fact made by the District Court.

What the findings of fact as made herein by the District Court establish is the classic case of an estoppel. The conclusion seems compelled that the conduct of Olympia, as found by the District Court, justified "an inference of abandonment of the patent claim and of a finding that Olympia had induced [GE] to believe that its business [in manufacturing and marketing its printer] would be unmolested." Further, the District Court found that GE had made "substantial investments in its business . . . and its business [had] grown extensively." That was a sufficient finding of the prejudice required for an estoppel. On those findings, the District Court did not err in dismissing "in toto" Olympia's action, whether we assume that, by the relief granted, it implicitly did so under the rubric of an estoppel or that it actually ruled an estoppel under the "label laches."

The judgment of the District Court is accordingly affirmed.