Charles M. COLEMAN, Plaintiff,

v.

CORNING GLASS WORKS, Defendant.

No. CIV–81–894T.

United States District Court,
W.D. New York.

May 3, 1985.

---

Anthony D. Cennamo, Columbus, Ohio, Richard G. Vogt, P.C. (Jeanne M. Colombo, of counsel), Rochester, N.Y., for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear (Robert B. Conklin, of counsel), Buffalo, N.Y., Foley & Lardner (Russell J. Barron, of counsel), Milwaukee, Wis., for defendant.

## DECISION AND ORDER

TELESCA, District Judge.

### BACKGROUND

Dr. Charles M. Coleman, the plaintiff in this action, is the owner of the patent for a method and apparatus for separating blood cells from blood serum in a collection tube. On January 18, 1969, Dr. Coleman entered into a license option agreement with the defendant, Corning Glass Works, in which Coleman granted to Corning an exclusive license for the development of a commercial integrated blood serum separator under his patent. Plaintiff and defendant worked together on that project until September 25, 1972, when Corning terminated its agreement with Dr. Coleman. According to defendant, the venture was abandoned because of its conclusion that it could not make a functioning blood separation tube in accordance with Dr. Coleman's design, and because its independent research work had allegedly resulted in the development of a superior method.

After several years of continued research and development, Corning Glass Works announced in 1974 the development of the "Corvac Serum Machine", which went into production in early 1975. Corning later sold the entire product line to Sherwood Medical Industries in November, 1978.

On October 23, 1981, Dr. Coleman filed this action against Corning Glass Works. Dr. Coleman alleges that the Corvac blood separation device manufactured and sold by Corning was actually covered within the scope of his original patent. The complaint charges Corning with patent infringement, breach of contract, and the conversion and theft of plaintiff's trade secrets. Corning Glass Works has moved for summary judgment to dismiss the entire complaint under Federal Rules of Civil Procedure 56, principally on the grounds that the several causes of action are barred by plaintiff's delay in bringing this suit.

### DISCUSSION

### I. PATENT INFRINGEMENT

Dr. Coleman's amended complaint alleges that Corning Glass Works was guilty of direct patent infringement through the manufacture and sale of the "Corvac" serum tube (Count II), and contributory infringement through its sale of the product to Sherwood Medical Industries (Count IV). Corning moves for summary judgment on both of these claims, arguing that they are barred by plaintiff's laches.

The equitable doctrine of laches rests upon the recognition that it is inequitable for a patent owner to sleep on his rights and lead an infringer to make large investments in the belief that he is not infringing or that the patent rights will not

be pressed. *Potash Company of America v. International Minerals & Chemical Corp.*, 213 F.2d 153, 156 (10th Cir.1954). "The obvious principle is that it is inequitable to permit the patentee to recover for infringements occurring during the time of its own unreasonable, unexcused, and harmful delay." *A.C. Aukerman & Company v. Miller Formless Company*, 693 F.2d 697, 699 (7th Cir.1982).

■ The defense of laches consists of two essential elements: unreasonable and inexcusable delay in the assertion of the claim, and material prejudice to the defendant resulting from this delay. *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741 (Fed.Cir.1984). Where the delay in instituting suit exceeds the six (6) year time limitation prescribed by 35 U.S.C. Section 286, the delay is presumptively unreasonable and prejudicial to the defendant, and the burden is shifted to the plaintiff to produce evidence to rebut those presumptions. *Id.* The first issue to be resolved, therefore, is whether Dr. Coleman's delay in bringing this suit exceeded six (6) years.

### A. Length of the Delay.

To determine the length of plaintiff's delay, the Court must look to the date when plaintiff first knew or should have known of the defendant's alleged infringing action. *Studiengesellschaft Kohle v. Eastman Kodak Company*, 616 F.2d 1315, 1326 (5th Cir.1980), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). Dr. Coleman first became aware of Corning's plans to market the Corvac device in a published notice sometime around October, 1974 (Coleman Deposition p. 258). He concluded at that time that the Corning blood separator tube "probably" was covered by his patent, although he drew no definite legal conclusion (*Id.* ). Dr. Coleman first saw the Corvac blood separator tube on exhibit at a meeting of the American Asso-

ciation of Clinical Chemists, held in Toronto, July 14 through 19, 1975. (Coleman Affidavit para. 34). It was at that Convention that Dr. Coleman first drew the conclusion that the Corning commercial blood separator tube, the subject of this litigation, was covered by his patent (Coleman Deposition pp. 253, 259)—six (6) years and three (3) months before he filed this lawsuit in October, 1981.

■ Although Dr. Coleman saw the Corvac and knew of Corning's plans to market the tube by July, 1975, he argues that the laches time period did not begin until April 1, 1976, when he first received a legal opinion from an attorney that the Corvac was an infringement of his patent. That argument is untenable. It is settled that the laches period begins when the plaintiff discovers the *facts* which create his right or cause of action. *Potash Company of America, supra,* 213 F.2d 153, 155; *Dixon v. American Telephone & Telegraph Company,* 159 F.2d 863, 864 (2d Cir.1947), *cert. denied,* 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 350 (1947); *Olympia Werke Aktiengesellschaft v. General Electric,* 545 F.Supp. 598, 612 (W.D.Va.1982), *affd.,* 712 F.2d 74 (4th Cir.1983). Even if Dr. Coleman did not know whether the Corvac was technically an "infringement" in July, 1975, he knew all the facts concerning the Corvac project, and that he had somehow been wronged. According to his own affidavit (para. 36), after Dr. Coleman received an opinion from one attorney in January, 1975 that there was no infringement, he continued to make "a diligent effort to obtain legal representation regarding my belief that I had my invention stolen from me …".[1]

I therefore conclude that the period of Dr. Coleman's "delay" in bringing this lawsuit began no later than July, 1975, and hence exceeded the statutory six (6) year

---

1. In the alternative, plaintiff argues, without citing any authority, that his cause of action did not accrue, and that the laches period therefore did not commence, until Corning Glass finally began commercial sales of the Corvac in April, 1976. By July of 1975, however, Dr. Coleman knew that Corning had declared its intention of marketing the allegedly infringing Corvac, and could have brought suit for prospective injunctive relief at that time. Nothing more is required to commence the running of the laches clock.

period. Accordingly, Coleman's delay is presumed to be unreasonable and prejudicial, and the burden now shifts to plaintiff to rebut those presumptions. *Leinoff v. Louis Milona and Sons, Inc.*, 726 F.2d 734, 741–42 (Fed.Cir.1984); *Olympia, supra*, 712 F.2d 74, 77 (4th Cir.1983).

### B. Excuse for the Delay

■ Dr. Coleman has not identified any special circumstances of this case which would counter the presumption that his delay of more than six (6) years was unreasonably long. He alleges that much of the delay was due to his inability to find an attorney to prosecute the action, or to raise the necessary funds. Those excuses are inadequate as a matter of law. *Dixon v. American Telephone & Telegraph Company*, 159 F.2d 863 (2d Cir.1947); *Whitman v. Walt Disney Productions, Inc.*, 148 F.Supp. 37 (S.D.Calif.1957), *affd.*, 263 F.2d 229 (9th Cir.1958). There is no evidence that Dr. Coleman made any protest or assertion of his rights, even to the limited extent allowed by his poverty.

Dr. Coleman also argues that his delay in bringing suit should be excused because he had spent that time diligently consulting with no fewer than a dozen attorneys. But even if plaintiff did not waste any time in preparing for this lawsuit, he does not dispute the fact, critical for the measurement of laches, that he waited more than six (6) years to apprise the defendant of those plans.[2] Although Dr. Coleman concluded that the Corvac was covered by his patent in 1975, he did not communicate that conclusion to the Corning Glass Works by any method before filing his complaint (Coleman Deposition pg. 259), thus giving rise to a "long period of apparent inactivity". *Whitman, supra*, 148 F.Supp. at 40. Although Dr. Coleman's story does not pose

the classic laches situation of someone "sleeping on his rights", it might fairly be said that he took care not to disturb the defendant or to let it know he was awake as he searched about for his rights in the dark.

### C. Prejudice

■ Dr. Coleman has likewise been unable to identify any unusual aspects of this case to rebut the presumption that his delay of more than six (6) years was prejudicial to Corning. Prompt notification of his intention to sue would have either caused Corning to alter its plans to develop the Corvac, or at least would have enabled Corning to proceed with its plans "with complete knowledge of the risk of litigation [so that Corning] could have taken steps to mitigate any losses attendant upon an adverse result in such a suit". *Olympia Werke, supra*, 545 F.Supp. at 614. In his Memorandum of Law, Dr. Coleman essentially makes that point himself, where he asserts that Corning sold the rights to Corvac several years later, after it became "boldly confident" that Dr. Coleman would not be contesting the ownership of the patents transferred (pg. 33). That is prejudice enough.

■ Dr. Coleman also reasons that his delay could not have been prejudicial because it had permitted Corning to earn over $10,000,000 in profits. That same argument was properly rejected as "spurious" by the court in *Lemelson v. Carolina Enterprises, Inc.*, 541 F.Supp. 645, 655 (S.D. N.Y.1982). "[I]t is not necessary that a defendant lose money on a product to be prejudiced by a patent holder's failure to institute a timely action. Such a requirement would eviscerate the laches defense, since patent holders normally do not commence suits for an accounting of profits

---

**2.** For example, it has often been held that a plaintiff's delay in bringing suit against an infringer is not excused by the plaintiff's activity in pursuing other infringers in other suits, unless the defendant has been notified of the pending suits. "The importance of a patentee's giving notice of other litigation, and of its intent to pursue other infringers, is to let the alleged

infringer know that the patentee has not acquiesced in the former's infringement." *A.C. Aukerman v. Miller Formless Company, Inc.*, 693 F.2d 697, 700 (7th Cir.1982). The same reasoning applies with even greater force to a plaintiff who seeks to excuse his delay on the grounds of his activity in trying to obtain legal counsel.

under the patent laws where there has been no profit to the alleged infringer." *Id.* On the contrary, it is settled that the successful expansion of an infringer's business is itself the kind of prejudice which will support the defense of laches. *Olympia, supra,* 545 F.Supp. at 614.[3]

### D. "Unclean Hands"

■ Even if the elements of a laches defense are present in this case, Dr. Coleman argues that Corning may not avail itself of the defense because of its egregious conduct in infringing his patent. The equitable doctrine of "unclean hands" applies to cases of an exceptional character, such as where the one asserting the defense of laches was responsible for the plaintiff's delay, or allayed the plaintiff's suspicions through deception. *Potash Company of America, supra,* 213 F.2d at 155. For example, in *T.W.M. Manufacturing Company, Inc. v. Dura Corporation,* 592 F.2d 346 (6th Cir.1979), upon which plaintiff relies, there was evidence that the defendant had sponsored a third-party action challenging the plaintiff's patent in order to harass the plaintiff and keep the patent's validity in question. In such unusual circumstances, the assertion of a laches defense would be not only inequitable but unsound, for the plaintiff's delay would have given the defendant no good reason to believe that the patent rights were worthless or abandoned. *See Galliher v. Cadwell,* 145 U.S. 368, 372, 12 S.Ct. 873, 874, 36 L.Ed. 738 (1892).

■ Dr. Coleman has not alleged any similarly extreme examples of "egregious conduct" on the part of Corning Glass Works. Plaintiff's allegations, if true, merely illustrate that there is always some measure of inequity in allowing an infringer to deprive a patent owner of royalties and other rights afforded by the patent. But that sort of inequity does not bar the assertion of a laches defense; it is simply a factor to be balanced against the alternative injustice of allowing the patent owner to press his rights after a lengthy delay. *Potash Company of America, supra,* 213 F.2d at 156. Dr. Coleman's allegations of Corning's wrongdoing (most of which occurred before July, 1975) simply do not constitute "the sort of egregious conduct that would excuse the inordinate delay in this case". *Lemelson, supra,* 541 F.Supp. at 654.

### E. Conclusion

The Second Circuit Court of Appeals has observed that the questions raised by a laches defense are particularly amenable to resolution by summary judgment. *Dixon, supra,* 159 F.2d at 864. The required elements of a laches defense have been presumptively established by Dr. Coleman's delay of more than six (6) years in bringing this suit, and he has failed to produce any evidence to counter those presumptions. Consequently, although Dr. Coleman may seek damages or injunctive relief for events occurring after the complaint was filed, he is barred from recovering any pre-filing damages. *Leinoff, supra,* 726 F.2d at 741.

Since Corning Glass Works sold its Corvac product line to another business more than two years before the filing of this complaint, Dr. Coleman's claims of patent infringement (Count II) and contributory infringement (Count IV) are completely barred by the defense of laches. Corning is therefore granted summary judgment as to those two claims.

## II. METPATH INFRINGEMENT

Dr. Coleman's delay in bringing this suit does not bar Count III of the amended complaint, "Metpath infringement", plaintiff's only patent infringement claim based on actions occurring since the beginning of this lawsuit. In that count, Dr. Coleman alleges that Corning Glass Works contin-

---

**3.** In affirming the District Court's conclusion in *Olympia,* the Fourth Circuit Court of Appeals held that the defendant's substantial and profitable business investments were a sufficient finding of the prejudice required for an estoppel. 712 F.2d at 80. *See also, Studiengesellschaft, supra,* 616 F.2d at 1326–27.

ues to infringe his patent through the actions of its wholly owned subsidiary, Metpath, Inc., which is procuring and using integrated blood serum separator tubes which are substantially identical to the Corvac serum machine.

Metpath, Inc. ("Metpath") was incorporated on October 3, 1967. It is a New York State corporation with its offices in New Jersey. Since February 26, 1982, Metpath has been a wholly owned subsidiary of Corning Glass Works, but it remains separately incorporated. These basic facts, which are amply documented by defendants' affidavits and documentary proof, are not seriously disputed by plaintiff. Nor does he quarrel with the general rule that two separately incorporated companies are separate and distinct entities under the law.

Nevertheless, Dr. Coleman seeks to hold Corning Glass Works liable for the actions of Metpath, under the doctrine that a veil between corporations will be pierced where "one is a mere agency or department of the other and is used as an instrumentality to perpetrate fraud, justify wrong, avoid litigation or render it more difficult, or generally to escape liability for what are in substance its own acts". *Owl Fumigating Corporation v. California Cyanide Company*, 30 F.2d 812, 813 (3rd Cir.1929). To prevail on such a theory, plaintiff must establish that Metpath was a "mere instrumentality" of Corning Glass Works, by showing "that [Corning] actually dominates [Metpath] such that the subsidiary has no existence of its own and that [Corning] uses the corporate existence of [Metpath] to perpetrate a fraud". *Williams v. McAllister Brothers, Inc.*, 534 F.2d 19, 21 (2d Cir.1976). In the present case, plaintiff has not provided adequate evidence to raise a genuine question of fact as to either of these elements.

■ Dr. Coleman has been unable to produce any evidence that Metpath, which was incorporated almost 15 years before it became a Corning subsidiary, has no independent existence of its own. In the light of the numerous and uncontroverted as-

pects of Metpath's corporate independence documented by defendant, the elements of control identified by Dr. Coleman—including the facts that Corning owns all the shares of Metpath, pays the salary of Metpath's chief executive officer, and may have referred to Metpath as a "division"—are inadequate as a matter of law to establish the degree of domination necessary to disregard Metpath's separate corporate identity. *D.L. Auld Company v. Park Electrochemical Corporation*, 553 F.Supp. 804, 807 (E.D.N.Y.1982); *Schippers v. Midas International Corporation*, 446 F.Supp. 62 (E.D.Tenn.1978). Although plaintiff has pointed to certain loose language in Corning's Annual Reports about its "merger" with Metpath, the defendant has conclusively established that the merger referred to was actually between Metpath and Cormet Holdings, Inc., one of Corning's wholly owned and separately incorporated subsidiaries.

■ Plaintiff has also failed to allege any facts which might establish the second requirement for "piercing the corporate veil": namely, that Corning uses the separate corporate existence of Metpath to perpetrate a fraud (as would be the case, for example, if Metpath were grossly undercapitalized, or if the connection between the two corporations were concealed). Even if Corning Glass receives an indirect, unjust profit from its *ownership* of Metpath, plaintiff has offered no explanation as to how Corning derives any fraudulent profits—or any advantage at all—from the mere fact of Metpath's separate corporate existence.

For both of the foregoing reasons, Dr. Coleman has offered no evidence which would warrant a decision to pierce the corporate veil and hold Corning liable for Metpath's activities. Summary judgment is therefore granted to defendant as to Count IV of the amended complaint.

## III. STATE CLAIMS

■ The remaining claims of plaintiff's amended complaint all arise under State

law for breach of contract, conversion, and theft of trade secrets. Corning has moved to dismiss these claims as well, on the grounds that they are barred by plaintiff's laches as well as the applicable statutes of limitations. In view of my decision to dismiss the Federal claims in the amended complaint, however, it is appropriate to consider whether this Court ought to exercise subject matter jurisdiction over plaintiff's pendent state claims. The question of subject matter jurisdiction is so fundamental that it is a "question the Court is bound to ask and answer for itself", even when not otherwise suggested by the parties to the action. *Mansfield, Coldwater & Lake Michigan Railway v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

■ Since Dr. Coleman's federal claims of patent infringement were not insubstantial, this Court has the power under 28 U.S.C. Section 1338(b) to entertain and decide his related state law claims (at least to the extent that those claims can be fairly construed as "a claim of unfair competition"). "But the existence of federal power does not mean that the trial court must or should exercise its jurisdiction in all cases where it in fact exists." *A.H. Emery Company v. Marcan Products Corporation*, 389 F.2d 11, 20 (2d Cir.1968), *cert. denied*, 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also, Federman v. Empire Fire & Marine Insurance Company*, 597 F.2d 798, 809 (2d Cir.1979); *C.E.S. Publishing Corporation v. St. Regis Pub-*

*lications, Inc.*, 531 F.2d 11, 15 (2d Cir. 1975). That rule is to be observed even in cases, such as this one, where the district court has original jurisdiction over the state claims under 28 U.S.C. Section 1338(b). *A.H. Emery Company, supra*, 389 F.2d at 20 (2d Cir.1968); *Smith v. Weinstein*, 578 F.Supp. 1297, 1304–05 (S.D. N.Y.1984), *affd.* 738 F.2d 419 (2d Cir.1984).

■ Based on the reasoning of the foregoing authorities, and after weighing considerations of comity, judicial economy, convenience, and fairness to the litigants, this Court declines to exercise its pendent jurisdiction over Dr. Coleman's state law claims.[4] I note that Dr. Coleman is not precluded from bringing his action in state court, since the state statutes of limitations have been tolled during the pendency of this action. *See Dunton v. County of Suffolk*, 729 F.2d 903, 911 fn. 8 (2d Cir.1984), *modified on other grounds*, 748 F.2d 69 (2d Cir.1984). This decision is also consistent with the Supreme Court's recommendation that federal courts should avoid rendering "needless decisions of state law". *Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139. Accordingly, there is no need to decide defendant's remaining motions on the merits of Dr. Coleman's state claims.

## CONCLUSION

Defendant's motion for summary judgment on the grounds of plaintiff's delay in bringing suit is granted with respect to each of the plaintiff's federal claims arising under the patent laws of the United States, and those claims are dismissed with prejudice.

As this Court lacks subject matter jurisdiction over the remaining causes of action

---

4. I note that plaintiff has never asserted the presence of diversity jurisdiction in this action. Even if he had done so, the amended complaint fails to show diversity of citizenship on its face, because it does not allege the citizenship of the plaintiff. *Baer v. United Services Automobile Association*, 503 F.2d 393, 397 (2d Cir.1974). (Before it was amended, the plaintiff's complaint had originally alleged that he was a resident of Pennsylvania, but "a statement that the party is a 'resident' of a particular state or

foreign country is not sufficient since jurisdiction depends on citizenship and not mere residence". Wright and Miller, Federal Practice and Procedure, Section 1208 (1969).)

Since neither the complaint nor the record before me "negates the possibility that the parties are not of diverse citizenship", the complaint must be dismissed *sua sponte* for lack of subject matter jurisdiction. *Baer, supra*, 503 F.2d at 393.

in the plaintiff's complaint, they are dismissed on the motion of the Court pursuant to Federal Rules of Civil Procedure 12(h)(3), without prejudice to being raised in State court.

ALL OF THE ABOVE IS SO ORDERED.