**E.T. MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**XOMED, INC., Defendant.**

**No. 86–100–Civ–J–14.**

United States District Court, M.D. Florida, Jacksonville Division.

July 1, 1987.

Bruce Sperling, Sperling, Slater & Spitz, Gerald D. Hosier and Barry W. Sufrin, Hosier & Sufrin, Ltd., Chicago, Ill., E. Robert Meel, Commander, Legler, Werber, Dawes, Sadler and Howell, Jacksonville, Fla., for plaintiff.

John W. Chestnut, Jerome F. Fallon, Richard B. Hoffman, Tilton, Fallon, Lungmus & Chestnut, Chicago, Ill., William E. Kuntz, Smith & Hulsey, Jacksonville, Fla., for defendant.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case came on upon Defendant's Motion For Summary Judgment, filed herein on April 27, 1987. Plaintiff's response in opposition was filed on June 10, 1987. The Court heard oral argument on June 23, 1987.

In Count I, plaintiff, E.T. Manufacturing, Inc. [hereinafter "E.T."] brings an action for patent infringement. In Count II, E.T. brings an alternative cause of action for misappropriation and unlawful use of its proprietary and confidential information. Defendant Xomed, Inc. [hereinafter "Xomed"] seeks summary judgment on Count I on the basis of invalidity of the patent, estoppel and laches. Xomed seeks summary judgment on Count II on the basis of the statute of limitations. The Court will address these in turn.

### Count I—Infringement

There is no dispute that the patent in question was applied for by its inventors, Dr. Paparella, Edward Goldberg and Ralph Ostensen, on August 31, 1972. All three inventors assigned the invention to Medical Products Corp. [hereinafter "MPC"] in August, 1972. The patent was issued on April 30, 1974, to MPC. MPC and E.T. formed a joint venture and the patent was assigned to the joint venture on June 11, 1974. (Exhibit I to Xomed's Memorandum). The joint venture was dissolved in 1978 and the patent was assigned to E.T. (Exhibit J to Xomed's Memorandum).

MPC and the joint venture became aware that Xomed was selling the patented item. In 1974, the joint venture proposed licensing the patent to Xomed. (Exhibit N to Xomed's Memorandum). Xomed, at that point, challenged the validity of the patent on the ground that Xomed had been selling the item before the application for the patent. (Exhibit P to Xomed's Memorandum).

Xomed's challenge is based on 35 U.S.C. § 102(b), which provides:

A person shall be entitled to a patent unless the invention was ... on sale in this country, more than a year prior to

the date of the application for patent in the U.S. . . . .

Xomed claimed that it contacted Dr. Paparella in late 1970 or early 1971 regarding manufacturing his invention. Xomed claims that Dr. Paparella gave it samples and wanted Xomed to begin making the medical tubes. Xomed began making and selling the tubes. There is a question of fact as to when this actually occurred. There are customer orders for the tubes dated July 13 and August 27, 1971. There are numerous exhibits which tend to establish that Xomed sold the tubes more than a year prior to the August 31, 1972, patent application.

■ To counter this, E.T. presents purchase orders by Xomed dated August 18 and September 7, 1971, for the tools and molds needed to make the tubes. (Plaintiff's Exhibit D). An employee of Xomed in 1971 stated that once the molds were built, it would take additional time before actual tubes sold. (Plaintiff's Exhibit F, at 49–50). Also, E.T. maintains that Dr. Paparella did not approve of Xomed's manufacture and told Xomed not to go ahead. (Plaintiff's Exhibit J). Thus, E.T. has created a question of fact as to when Xomed actually started selling the tubes. Xomed is not entitled to summary judgment on the merits of the infringement claim. The Court will address laches and estoppel.

### Laches and Estoppel

■ Xomed claims that E.T. has delayed filing suit and that summary judgment is appropriate under laches or estoppel. Laches bars recovery of pre-suit damages while estoppel bars any recovery, including prospective relief. The defense of laches requires unreasonable, inexcusable delay and prejudice to the infringer. Estoppel requires the additional element of affirmative conduct by the holder of the patent which induces the alleged infringer into believing that the patentee has abandoned

its claim. *See, e.g., Bott v. Four Star Corp.,* 807 F.2d 1567, 1575 (Fed.Cir.1986) (elements of laches); *A.C. Aukerman Co. v. Miller Formless Co.,* 693 F.2d 697, 699, 701 (7th Cir.1982) (elements and effects of laches and estoppel); *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1325 (5th Cir.1980) (elements and effects of laches and estoppel).

■ The Court finds that Xomed is not entitled to summary judgment on the basis of estoppel. The Court is unable to find from the evidence that E.T. acted in such a way as to induce Xomed into believing that E.T. was abandoning its claim to the patent. On the contrary, the evidence indicates that although E.T. only sporadically questioned Xomed about its challenge to the patent, E.T. never agreed that Xomed's challenge was meritorious. (*See* Xomed's Exhibits Q, S, T, V, X, Z, and BB). The Court will deny the motion for summary judgment based on the defense of estoppel.

■ Regarding laches, Xomed established that the patent holder knew of Xomed's manufacture and sale of the tubes at least as early as 1975. In April, 1975, Xomed rejected a proposed licensing agreement on the basis of its challenge to the validity of the patent and continued to manufacture and sell the tubes. (Xomed's Exhibit P). E.T. did not file suit until 1985. Thus, there was a delay of approximately ten years. The Court finds this delay in filing suit to be unreasonable. *See A.C. Aukerman Co.,* 693 F.2d at 699.[1]

Furthermore, the Court finds that Xomed has been prejudiced by the delay in filing suit. Xomed's attorney, Warren Kinney, who first raised the possible challenge to E.T.'s patent and who authored much of the correspondence from Xomed to E.T. concerning this challenge, died in 1978. (Xomed's Exhibit Y). In addition, several documents relating to Xomed's sales in 1971 were discarded, and originals of cer-

---

1. Using the six-year statutory period for recovery provided in 35 U.S.C. § 286, courts have applied a rebuttable presumption of unreasonable delay when actions are filed beyond six years from becoming aware of the infringement. *See Bott,* 807 F.2d at 1576; *Eastman Kodak Co.,* 616 F.2d at 1326. In this case, E.T. did not file suit within six years of first learning of the infringement and E.T. has not rebutted the presumption that the delay in this case is unreasonable.

tain documents no longer exist. (Xomed's Exhibit B, at 24, 28). The Xomed employees who actually manufactured the tubes in 1971 are now unknown and cannot be discovered. (Exhibit B, at 3, 29–30). Bristol–Myers purchased Xomed in 1979 and was not aware of any action for infringement by E.T. Thus, Bristol–Myers has been prejudiced by delaying the filing of the lawsuit.[2] (Xomed's Exhibit B, at 5–6). The delay in this lawsuit has also prejudiced E.T. E.T. challenges the reliability of the purchase orders and shipping documents used by Xomed to establish its sales prior to August, 1971. E.T. claims that the originals of these orders were discarded or lost by Xomed and that it is unknown who authored them and copied them, where the originals and copies were stored and how the originals were lost. *See* Plaintiff's Response, at 4–5. Thus, it will be difficult to admit evidence at trial relevant to Xomed's sales in 1971. The Court finds, therefore, that Xomed has been prejudiced by E.T.'s delay in filing suit.

The Court will address whether E.T. has provided an excuse for the delay. E.T. asserts that from July 11, 1974, to December 17, 1982, the parties were engaged in continuous negotiations to reach a settlement or licensing arrangement. Such negotiations constitute an excuse for failing to file suit. *See Photon, Inc. v. Eltra Corp.*, 308 F.Supp. 133, 139 (N.D.Ill.1969). The record in this case, however, belies E.T.'s assertion. While the patentee and Xomed engaged in such negotiations, the contact between the parties was sporadic and no progress was made at all toward reaching a settlement or licensing agreement. The negotiations in this case took the form of E.T. attempting to get information from Xomed regarding Xomed's challenge to the patent; Xomed responding, often uncooperatively, to the request; and Xomed indicating that it was closing its file on this matter. (*See* Xomed's Exhibits S, T, U). In fact, E.T.'s parent corporation, Moxness Products, Inc., at one point stated to Xomed: "Over the past several years, through Allegretti, Newitt, Witcoff &

McAndrew, attorneys, who basically represented our partners in the joint venture, there has been a *not-too-diligent* pursued effort to resolve whether or not Xomed has the proper documentation to invalidate this patent." Letter by James E. Mohrhauser, dated January 22, 1979 (emphasis added). (Xomed's Exhibit V). It does not appear that there was any contact, let along negotiations toward reaching a settlement, between February, 1977 (Xomed's Exhibit U) and January, 1979 (Xomed's Exhibit V), and between February, 1979 (Xomed's Exhibit W) and December, 1981 (Xomed's Exhibit X). E.T. has not presented any other material which supports its assertion that between 1975 and 1982, it engaged in continuous, progressive negotiations with Xomed. The Court finds that E.T. and Xomed did not engage in continuous settlement or licensing negotiations which excuse E.T.'s delay in filing suit. Therefore, the Court finds that E.T.'s delay in filing suit is unreasonable, inexcusable, and has prejudiced Xomed. The Court will address E.T.'s defense to laches based on Xomed's "unclean hands."

### Unclean Hands Defense

E.T. asserts that because laches is an equitable defense, a balance of the equities precludes granting summary judgment on the defense of laches. E.T. maintains that the doctrine of "unclean hands" precludes Xomed from asserting the defense of laches. It is well recognized that a defendant who contributes substantially to the delay in the filing of the suit or who has engaged in other egregious conduct cannot base a defense on laches. *Bott*, 807 F.2d at 1576; *TWM Manufacturing Co., Inc. v. Dura Corp.*, 592 F.2d 346, 349 (6th Cir.1979), *cert. denied,* —— U.S. ——, 107 S.Ct. 183, 93 L.Ed.2d 117. As the Tenth Circuit stated, "[I]f material facts are concealed or misrepresented by a suspected wrongdoer, and if in reliance thereon the person wronged is deceived and his suspicions allayed for awhile, a court of equity will not grant the wrongdoer any advantage resulting from the lapse of time." *Potash Co. of*

---

**2.** The Court is not assessing blame on either    E.T. or Xomed for Bristol–Myers' unawareness.

**1086**

*America v. International Minerals & Chemical Corp.*, 213 F.2d 153, 155 (10th Cir.1954). *See also Coleman v. Corning Glass Works*, 619 F.Supp. 950, 955 (W.D.N.Y.1985).

E.T. alleges that Xomed concealed or misrepresented material facts regarding its sales in 1971 and that E.T. was allayed by those misrepresentations. E.T. also alleges that Xomed has engaged in egregious conduct by plagiarizing the invention. The Court will first address E.T.'s allegation that Xomed concealed facts. E.T. claims that Xomed concealed the following three material facts:

1. The fact that it had correspondence establishing that it did not have Dr. Paparella's approval of the tube designs or his permission to make or sell the tubes.
2. The fact that Xomed did not even issue purchase orders for the molds for the tubes until August 18, 1971, and September 7, 1971, well after it, at various times, had represented to have made, shown and sold tubes.
3. The fact that it did not ship any tubes until September 21, 1971, and that it had no invoices indicating to the contrary.

Plaintiff's Response, at 11.

■ Assuming that these "facts" are true and that Xomed did conceal these facts, the Court finds that this does not preclude the defense of laches. These facts tend to weaken Xomed's challenge to the patent. By concealing these facts, Xomed did not allay E.T.'s fears that it was infringing on E.T.'s patent or that it was continuing to manufacture and sell the tubes. On the contrary, if E.T. knew these facts, E.T. might have felt justified in delaying litigation in the hopes of reaching a licensing agreement.

In *Potash Co. of America*, the case relied upon by E.T., plaintiff claimed that defendant made misrepresentations as to its process so as to lead plaintiff to believe that it was not utilizing plaintiff's patent.

Plaintiff also alleged that the defendant delayed allowing an inspection of its plant to determine if there was an infringement and that when there was an inspection, defendant concealed information relevant to the patent. The court rejected plaintiff's claims. The court found that the record indicated that plaintiff knew defendant's process would constitute an infringement even before defendant opened its plant and that defendant never stated it was altering its process. The court also rejected plaintiff's claim that defendant was responsible for the late filing of the suit by delaying an inspection. The court affirmed the trial court's determination that laches barred plaintiff from recovering damages for the infringement. 213 F.2d at 159–61.

In the present case, E.T. does not allege that Xomed attempted to conceal its infringement. Quite the contrary, Xomed openly challenged E.T.'s patent and manufactured and sold the patented tubes. E.T. did not discover the allegedly concealed "facts" until it engaged in discovery after filing this action.[3] This is precisely why E.T. should have filed suit when it realized Xomed would not cooperate in turning over information relevant to its challenge to the patent. The Court finds that even if Xomed did conceal the facts as E.T. alleges, Xomed is not guilty of contributing to E.T.'s delay in filing suit.

■ In addition, E.T. asserts that Xomed is also guilty of "deliberate, calculated plagiarism in copying the tube design without any independent effort of its own." Plaintiff's Response, at 11. Egregious conduct such as deliberate, calculated plagiarism has been recognized as a defense to laches. *TWM Manufacturing Co., Inc.*, 592 F.2d at 349. In *TWM Manufacturing Co., Inc.*, plaintiff offered proof to support its position that defendant contrived with plaintiff's employee or consultant to copy the patent. In addition, plaintiff offered proof that defendant sponsored litigation by a third party challenging plaintiff's patent.

**3.** Counsel for E.T. admitted at oral argument that he first learned of these facts at a deposition during this case.

The Sixth Circuit stated that if plaintiff could prove these claims of plagiarism and harassment, the equities would not favor defendant's claim of laches. *Id.*

In the present case, plaintiff offers no such proof of deliberate, calculated plagiarism. The evidence indicates that Xomed contacted Dr. Paparella who sent Xomed samples of the tubes. There is a dispute as to whether Dr. Paparella authorized Xomed to manufacture and sell the tubes. However, Xomed's conduct does not rise to the level in *TWM Manufacturing, Co., Inc.* of contacting an employee or consultant of the patentee and inducing that person into copying the patent. Moreover, Xomed contacted Dr. Paparella before the patent issued. The Court finds that Xomed's conduct is not sufficiently egregious to preclude the defense of laches.

The *Coleman* court articulated the factors to be weighed when determining whether to allow the defense of laches. In discussing plaintiff's claims of egregious conduct and plagiarism on the part of defendant, the court stated:

> Plaintiff's allegations, if true, merely illustrate that there is always some measure of inequity in allowing an infringer to deprive a patent owner of royalties and other rights afforded by the patent. But that sort of inequity does not bar the assertion of a laches defense; it is simply a factor to be balanced against the alternative injustice of allowing the patent owner to press his rights after a lengthy delay.

619 F.Supp. at 955.

The Court, having balanced the equities, finds that this case favors the application of the defense of laches. The Court finds that the delay of filing suit in this case, which exceeds ten years, is unreasonable. There is no excuse for this delay and Xomed, as well as E.T., has been prejudiced by the delay. While Xomed may be guilty of some degree of unclean hands by obtaining the patent from Dr. Paparella in 1971, Xomed's conduct does not rise to the level which precludes laches. In addition, the exact degree of Xomed's culpability is even difficult to ascertain precisely because of the lengthy delay. Undoubtedly, memories of events of 1971 have diminished and documents have been lost or destroyed. In addition, at least one key witness has died. The Court will, therefore, grant summary judgment on Count I based on the defense of laches.

As to Count I for infringement, plaintiff seeks (a) a declaratory judgment that its patent is valid; (b) prospective injunctive relief against further infringement; and (c) damages for the infringement, trebled because of the willful and deliberate character of the infringement. The Court will enter judgment for Xomed against E.T. on E.T.'s claim for damages. The Court will deny summary judgment with respect to the declaratory and injunctive relief requested.

### Misappropriation

Xomed seeks summary judgment on Count II for misappropriation on the basis of the statute of limitations. The parties disagree on which state's law governs Count II. E.T. maintains that there are four possible jurisdictions: Illinois, Wisconsin, Ohio, and Minnesota. The statute of limitations in Minnesota is six years, 32 Minn. Statutes Ann. § 541.05; Wisconsin's is six years, Wisc. Statutes Ann. § 893.51; Illinois's is five years, 83 Smith–Hurd Ill. Ann. Statutes § 16; and Ohio's is four years, Ohio Rev. Code Ann. § 2305.09. Rather than determine under conflicts of laws principles which state's statute of limitations applies, the Court will determine whether E.T. can satisfy the longest statute of limitations which is six years.

E.T. asserts that Count II for misappropriation is raised as an alternative to Count I for infringement. It is E.T.'s position that only if the trier of fact determines that E.T. does not have a valid patent because of Xomed's sales in 1971, that its action for misappropriation is proper. E.T. maintains that it will not suffer injury for misappropriation until the determination that Xomed's sales in 1971 render the patent invalid. E.T. asserts that the statute of limitations cannot begin to run until it suffers injury.

■ The Court disagrees. If Xomed misappropriated E.T.'s proprietary informa-

tion in 1971 when it obtained the tubes from Dr. Paparella, E.T. would have suffered injury when it was first denied the benefits and profits from its proprietary information. E.T.'s predecessors were aware that Xomed obtained the tubes from Dr. Paparella and began selling the tubes at least as early as November 15, 1972. (*See* Defendant's Exhibit L—letter from Dr. Paparella to MPC stating Xomed sells his tubes cheaper than MPC). At that point, E.T. should have realized that it might have a cause of action against Xomed for misappropriation and that it was suffering damages. The Court finds that E.T.'s cause of action for misappropriation began to run at least as early as 1972. E.T. is therefore barred by the statute of limitations and the Court will grant Xomed's motion for summary judgment on Count II.

Accordingly, it is

ORDERED:

1. That Defendant's Motion for Summary Judgment, filed herein on April 27, 1987, is granted in part.

2. That the Clerk of the Court is hereby directed to enter Judgment for defendant against plaintiff on Count II of the Complaint and on the claim for damages contained in Count I.

3. That the motion is denied in all other respects.