Cravens L. **WANLASS**, Energystics, Inc. and Wanlass International, Inc., Plaintiffs–Appellants,

v.

**FEDDERS CORPORATION** and Rotorex Company, Inc., Defendants– Appellees.

No. 97–1418.

United States Court of Appeals, Federal Circuit.

June 18, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Aug. 12, 1998.

Robert M. Taylor, Jr., Lyon & Lyon LLP, Costa Mesa, CA, argued, for plaintiffs–appellants. With him on brief were Robert E. Lyon, James H. Shalek, and Charles C. Fowler.

Martin E. Goldstein, Darby & Darby P.C., New York City, argued, for defendants–appellees. With him on brief was Pierre R. Yanney.

Before MAYER, Chief Judge, and MICHEL and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Concurring opinion filed by Circuit Judge RADER. Dissenting opinion filed by Chief Judge MAYER.

MICHEL, Circuit Judge.

Cravens L. Wanlass, Energystics, Inc. and Wanlass International, Inc., (collectively, "Wanlass") appeal the order of the United States District Court for the District of Utah in *Wanlass, Inc. v. Fedders Corp.*, No. 2:95–CV–909–S (consolidated with 2:95–CV–0320–S), slip op. at 30 (May 19, 1997), which granted to Fedders Corp. and Rotorex Corp. (collectively, "Fedders") summary judgment on the ground of laches thereby dismissing the patent infringement suit brought by Wanlass. This case was submitted for our decision following oral argument on March 2, 1998.

The district court erred in applying the presumption of laches based on the summary judgment record, and when Wanlass could not rebut the presumption, improperly found that Wanlass unreasonably, inexcusably, and prejudicially delayed in filing suit against Fedders. On this record, the issue simply could not be resolved on summary judgment. After development of additional evidentiary material and/or, if necessary, an evidentiary hearing, the district court on remand will be in a proper position to rule on the application of the presumption of laches. We, therefore, vacate the order and remand the case for such further proceedings on laches as may be appropriate.

## BACKGROUND

In September 1995, Wanlass sued Fedders alleging infringement of United States Patent No. 4,063,135 (the "'135 patent"). The '135 patent, entitled "Electric Motor Having Controlled Magnetic Flux Density," issued in December 1977, and expired in December 1994. Wanlass, therefore, could only sue for damages from six years prior to filing suit, i.e., September 1989, until the expiration of the patent in December 1994. *See* 35 U.S.C. § 286 (1994). The '135 patent claims a single-phase, alternating current, electric motor that uses a capacitor with specific characteristics to produce a high efficiency output during the run operation.

Since the mid–1970s, Fedders has been manufacturing and selling compressors to the room air-conditioning industry. According to Fedders, since 1973 the motors used in its compressors have had essentially the same motor design. The accused product, the model C81B compressor, has been sold since 1992, and the motor inside the C81B unit that was tested was developed by General Electric Co. ("GE") in 1988.

Shortly after issuance of the patent, Wanlass attempted to license the invention to various companies such as GE, A.O. Smith Corp., and Whirlpool Corp. No company, however, would take a license, and negative reports about the invention were circulated through the air-conditioning industry. Furthermore, at least one company, GE, believed and told Wanlass that the claimed motor was "old art," implying that the patent was invalid. Following a universal rejection by the industry, from the early 1980s until the mid–1990s, Wanlass focused its commercial efforts on three-phase motors rather than making, selling or licensing the single-phase motor claimed in the '135 patent.[1]

Wanlass asserts that in the mid–1990s it learned that numerous companies had been infringing the '135 patent for some time. In 1995, Wanlass tested a Fedders air conditioner for the first time, determined that it infringed the '135 patent, and filed suit against Fedders. During discovery, only one document evidencing contact between Wanlass and Fedders prior to 1995 was produced. That document, found in Wanlass's files, is a form listing Fedders, its mailing address, telephone number, and the names of two contact people, each of whom presumably was mailed a letter and brochures. An entry on the form states that on January 28, 1982, one of the two Fedders contacts believed "motors are of great concern at this time. [We] are very interested in tech. breakthrough." The notation on the form continues that the contact person "will present to [the second Fedders contact person] as well as carry through engineering." The final entry dated January 17, 1983 is illegible.

In 1997, Fedders filed a motion for summary judgment alleging that Wanlass was precluded by laches from asserting infringement of the '135 patent against Fedders. The district court, applying the presumption of laches, granted the motion, and Wanlass timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a) (1994).

**1.** There is no discussion in the record before this court as to the relationship between single-phase motors and three-phase motors or whether there is any overlap in the industries to which each

## DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the propriety of summary judgment, credibility determinations may not be made, and the evidence must be viewed favorably to the non-movant, with doubts resolved and reasonable inferences drawn in the non-movant's favor. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116, 227 USPQ 577, 581–82 (Fed. Cir.1985) (in banc). We review *de novo* all district court decisions to grant summary judgment. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773, 34 USPQ2d 1822, 1824 (Fed.Cir.1995).

Where the grant of summary judgment is based on laches, however, additional standards of review may also apply:

[T]he standard of review of the conclusion of laches is abuse of discretion. An appellate court, however, may set aside a discretionary decision if the decision rests on an erroneous interpretation of the law or on clearly erroneous factual underpinnings. If such error is absent, the determination can be overturned only if the trial court's decision represents an unreasonable judgment in weighing relevant factors.

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992) (in banc) (citations omitted). In the instant case, however, because we hold that genuine issues of material fact precluded summary judgment of laches, we need not apply these additional standards of review.

In order to invoke the laches defense, a defendant must prove two elements:

1. the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and

type of motor could be marketed. Such information would be helpful to determine if, as Fedders asserted but Wanlass denied, Wanlass remained active in the air-conditioning industry.

2. the delay operated to the prejudice or injury of the defendant.

*Id.* at 1032, 22 USPQ2d at 1328. The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit. *See id.* "*Prima facie,* the underlying critical factors of laches are presumed upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity." *Id.* at 1035–36, 22 USPQ2d at 1331 (the "presumption of laches").

## I

In the present case, the district court found undisputed that Fedders has been using essentially the same motor circuit design since the 1970s[2] and that Fedders is an active participant in the room air-conditioning industry, participating in trade shows, advertising, and promoting its products. *See Wanlass,* slip op. at 24. According to the district court, therefore, if Wanlass had been properly policing its rights, it would have known about Fedders and the allegedly infringing motor well before 1995, before the critical date in 1989, and possibly as early as 1977. *See id.* at 28. The district court, therefore, held that the presumption of laches had been established because Wanlass had constructive knowledge of the alleged infringement at least six years prior to filing suit. *See id.*

 Once the presumption of laches is applied, a *prima facie* defense of laches is made. *See Aukerman,* 960 F.2d at 1037, 22 USPQ2d at 1332. With the presumption, the facts of unreasonable and inexcusable delay and of prejudice are inferred, absent rebuttal evidence. *See id.* Once the presumption is established, the patentee may introduce evidence sufficient to support a finding of the nonexistence of the presumed facts. *See id.*

at 1038, 960 F.2d 1020, 22 USPQ2d at 1333. In the instant case, however, the district court held that Wanlass failed to rebut the presumption, particularly as to prejudice to Fedders, and hence, the district court granted Fedders's motion for summary judgment of laches. *See Wanlass,* slip op. at 30.

 We need not and do not review the finding of inadequacy of the rebuttal evidence. We hold, however, that the district court erred in applying the presumption of unreasonable and inexcusable delay because the facts as developed for the summary judgment motion are not without genuine disputes on material issues as to whether Wanlass knew or reasonably should have known of Fedders's allegedly infringing activity before the critical date in 1989.

## II

Fedders presented evidence that Wanlass knew prior to its tests in the 1990s that single-phase motors were frequently used in the air-conditioning industry. From that evidence alone, the district court imposed upon Wanlass a duty to police its patent in the air-conditioning industry, and this duty included an unlimited and undefined duty to test any single-phase motor air conditioner. *See Id.* at 28. However, on the record presented on summary judgment, Wanlass could not reasonably be required to perform such a duty. First, Wanlass presented evidence that it was *not* active in the air-conditioning industry or at least in the single-phase, high-efficiency motor portion of the industry. In fact, Mr. Wanlass averred that he "seldom attended any conventions or shows where their [the air conditioning manufacturers'] products were featured, and then only in the early days, i.e., during the 1970's or early 1980's." Declaration of Cravens L. Wanlass regarding Opposition Memorandum to Nycor and Rotorex's Motion for Summary Judg-

---

2. Based on a circuit schematic submitted to Underwriter Laboratories in 1973 and apparently still accurate today, the district court found it "undisputed that the motor circuit design used by Fedders has remained the same since the 1970's" *Wanlass,* slip op. at 27. From this statement, however, the court cannot legally infer on summary judgment that the Fedders motors have

incorporated the same infringing technology since the 1970s because there is evidence and testimony, essentially uncontradicted, that infringement could not be determined based on the circuit diagram alone; an allegedly infringing motor would have to be tested in order to determine if, indeed, it infringed.

ment, ¶ 14 ("Wanlass Declaration"). Moreover, the mere fact that single-phase motors are used in room air conditioners is not enough to suggest infringement because not all single-phase motors infringe. Only those that use high-efficiency, single-phase motors with a capacitor operating with specific characteristics may. Therefore, policing the industry would require testing of an unknown number of models. Imposing a duty upon Wanlass to monitor the air-conditioning industry by periodically testing all others' products, therefore, would be unreasonable. Yet that is what the district court in effect did.

The district court also found that Fedders is a "well-known brand in the industry and has advertised its compressors and motors and has participated in trade shows for many years." *Wanlass,* slip op. at 27. And further, Fedders presented evidence that Wanlass knew sometime in the 1980s that Fedders made room air-conditioning units that may have used single-phase motors. From this evidence alone, the district court inferred that Wanlass "was aware of Fedders, and that they manufactured and sold air conditioners that use *the single-phase motors covered in his patent." Id.* at 25 (emphasis added). There is little support, however, for the notion that Wanlass had reason to believe the Fedders product infringed. For example, the advertisements relied upon by Fedders were not shown to have described the capacitor of Wanlass's invention.

Furthermore, Mr. Wanlass never admitted in his deposition testimony or in his declaration that he knew the single-phase motors in the Fedders air conditioners infringed or likely infringed the '135 patent. Nor did he state that all single-phase motors infringed the patent. To the contrary, Mr. Wanlass averred that "I did not, prior to filing suit, know of any way to determine if a motor infringed other than to test it." Wanlass

Declaration, ¶ 17. It was specifically shown, for example, that the circuit schematic did not so indicate. Nor did the appearance of the motor after its removal from the unit. Only testing could reveal infringement if any. No test was conducted until 1995.[3]

According to his deposition testimony, Mr. Wanlass's companies could not afford to purchase and dismantle every air-conditioner model on the market and test the single-phase motor found inside. Moreover, Wanlass would have no more reason to believe that Fedders was infringing its patent than was anyone else in the air-conditioning industry. Wanlass presented evidence that neither all high-efficiency nor all single-phase motors infringed, only possibly those high-efficiency, single-phase motors with a capacitor operating with specific characteristics. Yet there is no evidence that Wanlass knew, for example from advertisements, that the Fedders motors had these characteristics. The inference drawn by the district court, that Wanlass knew that the Fedders single-phase motors were covered by the '135 patent, therefore, is impermissible as both wholly unsupported and as adverse to the non-movant in this summary judgment context. Wanlass did not know, and indeed could not have known, that the single-phase motors used in Fedders's air conditioners infringed the claims of the '135 patent until after a Fedders compressor was tested. And Fedders did not establish on the summary judgment record that Wanlass had any particular reason to do so prior to 1995. Moreover, because of contrary evidence there is an inadequate basis for the district court's implicit finding that a program for testing all air-conditioner compressors of all makers was feasible and affordable and otherwise a reasonable burden to impose on the patentee. For example, no notion of how many prod-

---

3. Compare the record in this case, in which there was a lack of evidence that Wanlass should have known of Fedders's allegedly infringing activity and virtually no evidence of communications between them, with that in the copending appeal, *Wanlass v. General Electric Co.,* 148 F.3d 1334, in which GE had considered Wanlass's suggestion of taking a license under the Wanlass patent but told Wanlass that it thought the patent

was invalid as "old art" and despite rejecting the proffered license intended to continue to use the technology. *Id.,* at *11. In *GE* we held that "Wanlass was on notice that GE was a potential infringer...." In the instant case, by contrast, insufficient evidence was proffered on the summary judgment record to show Wanlass had information suggesting that Fedders was a likely infringer.

ucts per year would have to be tested was given by the court.

As a patentee, however, Mr. Wanlass could not simply ignore any and all evidence of potentially infringing activity, even if neither he nor his company was in fact still active in the industry. Wanlass knew that certain high-efficiency, single-phase motors used in the room air-conditioning industry might infringe the patent. Although Wanlass did not have a duty to police the room air-conditioning industry by testing all questionable products, it could not ignore evidence of potential infringement for most of the life of the patent, and then, during the patent's twilight, decide to aggressively police its rights by suing manufacturers based on testing evidence that it could and should have obtained several years earlier. Wanlass did have a duty to investigate a particular product if and when publicly available information about it should have led Wanlass to suspect that product of infringing. For example, any advertisements for high-efficiency air conditioners using single phase motors and having a capacitor capable of operating with specific characteristics should have alerted Wanlass to the prospect of infringement and therefore of the need to test that specific, advertised product. On the instant record, however, Fedders failed to show that Wanlass should have known that its model C81B compressor had these characteristics.

Consistent with Wanlass's assertions that it had no reason to suspect Fedders, as opposed to any other of the numerous makers of air conditioners, was infringing the '135 patent, the district court found that the only evidence indicating any sort of prior communication between Wanlass and Fedders was the ambiguous 1982 document. The district court, however, did not rely on the 1982 document to start the six year laches period, but rather relied on *Aukerman* for the premise that "[t]he simplest and purest form of laches exists when there is no direct contact between the plaintiff and the defendant from the time the patent holder *becomes aware of its claim* until the suit." *Wanlass,* slip op. at 28 (emphasis added) (citing *Aukerman,* 960 F.2d at 1034, 22 USPQ2d at 1329). In order to rely on this premise, however, the district

court must have inferred that Wanlass knew or should have known of Fedders's alleged infringement more than six years prior to filing suit, i.e., in 1989 or earlier. As discussed above, however, there is conflicting evidence on that issue, precluding its resolution on summary judgment. Further, the district court erred in relying on the above premise from *Aukerman* because it cannot be determined from the record presented that Wanlass became aware of its infringement claim by 1989.

The 1982 document indicates only that someone at Wanlass contacted someone at Fedders, but apparently no one ever followed up on the original contact. In the context of all the evidence presented, the document cannot be used to infer that Wanlass thought Fedders might be selling infringing motors in its compressors, that Wanlass even knew that Fedders sold high-efficiency, single-phase motors with a capacitor operating with specific characteristics, or that Wanlass purchased and tested a Fedders compressor containing an accused motor prior to 1995. Furthermore, when Mr. Wanlass was asked about the 1982 document in his deposition, he asserted he could remember nothing about it. Hence, the district court was correct that the 1982 document could not be used on summary judgment to show knowledge by Wanlass of Fedders's allegedly infringing activity as early as 1982. However, it would be improper for the district court on remand to disregard the 1982 letter simply because its meaning could not be discerned from the summary judgment record. After an evidentiary hearing, the trial court, the fact finder on the equitable doctrine of laches, will be able properly to draw reasonable inferences either in favor of or adverse to Wanlass regarding the 1982 document and in light of Wanlass's denial of any memory of it.

There are, therefore, three reasons why summary judgment was legally incorrect on the record presented. First, the conflicting evidence presented genuine issues of material fact as to whether likely infringement by Fedders had been shown. Second, inferences about Wanlass's state of mind were impermissibly drawn against Fedders, the non-movant. Finally, credibility determina-

tions, for example disbelieving Mr. Wanlass's testimony, were impermissibly made on summary judgment. It was, therefore, error for the district court to disregard Wanlass's testimony and to hold that Wanlass "should have known of possible infringement for at least six years prior to filing suit and possibly as early as 1977." *Id.* at 28. Based on this erroneous premise, however, the district court, applying the presumption of laches held laches barred Wanlass's infringement claim. *Id.* The district court judgment, therefore, must be vacated and the case remanded.

## III

The district court improperly relied on two decisions as factually analogous to show that Wanlass had constructive knowledge about Fedders's allegedly infringing air conditioners more than six years prior to filing suit in 1995: *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 39 USPQ2d 1925 (Fed.Cir.1996), and *Faulkner v. Baldwin Piano & Organ Co.*, 189 USPQ 695, 1976 WL 21082 (N.D.Ill. 1976), aff'd, 561 F.2d 677, 195 USPQ 410 (7th Cir.1977). The facts of these cases, however, are quite different from the circumstances here. In *Hall,* the patentee was active in the industry, and the alleged infringers engaged in open and notorious, allegedly infringing activity for more than six years prior to filing suit. 93 F.3d at 1552, 39 USPQ2d at 1928. Moreover infringement was apparent from just looking at the accused device: no dismantling and testing were necessary. *Id.* Hence, in *Hall,* the patentee should have known about the alleged infringing activity more than six years prior to filing suit.

In the instant case, unlike *Hall,* there is evidence that Wanlass was not active in the air-conditioning industry, that Wanlass did not attend trade shows in the middle to late 1980s,[4] and that Wanlass did not receive trade journals or other periodicals published in the air-conditioning industry. There also is evidence, virtually uncontradicted, that infringement could not be determined without purchasing the accused air conditioner, dis-

mantling it, and testing the motor inside, and hence the allegedly infringing activity was not open and notorious as in *Hall.*

Furthermore, unlike in *Hall,* there is conflicting evidence here as to whether Wanlass knowingly slept on its rights: "[We] mainly shifted our emphasis to three-phase licensing and remanufacturing because of lack of funds and other aspects and lack of interest." Wanlass Deposition, June 6, 1996, at 541. "We had pretty much been rebuffed in the late '70's and early '80's by all—almost everyone we talked to in one way or another, and so we weren't really looking at all." Wanlass Deposition, July 9, 1996, at 732. From these statements made by Wanlass, an inference easily can be drawn either that Wanlass should have known of the allegedly infringing motors and was not interested in pursuing the infringement at that time, or, equally, that Wanlass did not have reason to believe that anyone was using the invention claimed in the '135 patent and therefore found no need to investigate possible infringement. In light of the conflicting evidence, it was inappropriate for the district court to rule on summary judgment on the record presented that the plaintiff was prevented by laches from maintaining its suit because doing so required determining witness credibility, counter-weighing conflicting evidence, and drawing inferences against Wanlass. *See* Fed.R.Civ.P. 56(c).

The *Faulkner* case, also relied on by the district court, unlike the instant case, was decided after the court there conducted "extended hearings at which the parties presented substantial evidence," and the court considered post-trial briefs and "a number of informal post-hearing submissions by both sides." *Faulkner,* 189 USPQ at 697. Hence in *Faulkner,* the district court could properly evaluate credibility, weigh conflicting evidence, and draw adverse inferences; the district court here on the motion for summary judgment could not.

The district court, therefore, erred in granting summary judgment to Fedders on this record because genuinely conflicting

---

4. Mr. Wanlass, however, testified that he had attended some conventions early on, but he could not remember when or which ones.

evidence about whether Wanlass knew or reasonably should have known of Fedders's allegedly infringing activity precluded resolution of the issue on summary judgment. After further development of the evidence and/or an evidentiary hearing, however, the district court may be able to properly determine what Wanlass knew or reasonably should have known about Fedders's allegedly infringing activities more than six years prior to filing suit, i.e., as of 1989.

## CONCLUSION

Because there are genuine issues of material fact as to whether the presumption of laches arises, we vacate and remand for further proceedings on laches. We make no ruling as to the sufficiency of the evidence on unreasonable delay and prejudice presented by defendant on summary judgment, if the presumption does not apply. Nor do we require an evidentiary hearing if additional evidentiary material sufficiently supplements the record here to support summary judgment. We merely hold that on this record, summary judgment was improper. The judgment of the district court is therefore vacated and the case remanded.

*VACATED and REMANDED.*

## COSTS

Each party shall bear its own costs.

RADER, Circuit Judge, concurring.

I join this vacatur of summary judgment. I write separately to emphasize that, despite the broad language in *Wanlass v. General Electric Co.*, 148 F.3d 1334 (Fed.Cir.1998), a patentee is not subject to a broad duty to test all potentially infringing goods.

In *General Electric*, this court imposed upon patentees a broad duty to test products which might embody their patented technology. I join this opinion to the extent that it explains that the duty created in *General Electric* is not as sweeping as the language of that opinion suggests. Indeed, I continue to believe that a patentee only has a duty to test products that the reasonable person would suspect infringe the patent. *See Gen-*

*eral Electric*, 148 F.3d at 1340–41 (Rader, J. dissenting). To the extent that this opinion tries to reconcile its reasoning and result with the sweeping duty imposed by *General Electric*, I cannot agree.

Unfortunately, patentees, potential infringers, and courts will have difficulty applying the laches doctrine in light of this opinion and *General Electric*. In this opinion, this court notes that Wanlass and General Electric had engaged in some negotiations over the patented technology. At the end of these exchanges, General Electric declined Wanlass's offer of a license under the '135 patent, stating that the claimed technology was old and that General Electric already used it. As this court notes, Wanlass at that point was "on notice that GE was a potential infringer." However, this court overlooks that Wanlass acted on that notice. Wanlass then tested GE's products and found that, contrary to its statements, General Electric was not using the patented technology. I believe that, at that point, Wanlass had fulfilled his duty to test General Electric products. Having discharged his duty and found no infringement, Wanlass could turn his attention to other matters until publicly available information triggered another reasonable suspicion of infringement. This court gives no explanation for imposing on Wanlass a continuing duty to test GE products without any reasonable suspicion.

Because laches is a claim specific defense, Wanlass was under no duty to continue testing General Electric products until he received additional information that would cause a reasonable person to believe that General Electric had started infringing his patent. A reasonable suspicion as to one product does not necessarily impose a continuing duty to test all future products made by a given manufacturer. This is especially true where tests show that the initial suspicions were misdirected.

Similarly, Wanlass had no reason to believe that Fedders infringed his patents. As this court correctly points out, "Wanlass did have a duty to investigate a particular product if and when publicly available information about it should have led Wanlass to suspect

that product of infringing." Fedders's advertisements and other public statements were simply not likely to arouse reasonable suspicions that Fedders was using Wanlass's patented technology. Similarly, nothing in GE's advertisements and other public statements disclosed infringement. This case is correct and understandable: no publicly available information triggered a reasonable suspicion of infringement by Fedders and compelled Wanlass to conduct tests. This same principle would seem to cry out for a different result in *General Electric.*

MAYER, Chief Judge, dissenting.

Because there is no genuine issue of material fact as to whether Cravens L. Wanlass, Energystics, Inc., and Wanlass International, Inc. (collectively "Wanlass") should have known of Fedders Corporation's and Rotorex Corporation's (collectively "Fedders") possible infringement at least six years before filing suit (the "critical date"), I respectfully dissent. To invoke the laches defense, a defendant must prove that "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant." *A.C. Aukerman Co. v. R.L. Chaides Contr. Co.,* 960 F.2d 1020, 1032, 22 USPQ2d 1321, 1328 (Fed.Cir.1992); *see also Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773, 34 USPQ2d 1822, 1824 (Fed.Cir. 1995). The period of delay begins at the time the patentee has actual or constructive knowledge of the defendant's potentially infringing activities. *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1559, 42 USPQ2d 1737, 1745 (Fed.Cir. 1997) ("[D]elay begins when the plaintiff knew, or in the exercise of reasonable diligence should have known, of the defendant's allegedly infringing activity."); *Aukerman,* 960 F.2d at 1032, 22 USPQ2d at 1328.

A bedrock principle of laches charges a plaintiff "with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Johnston v. Standard Mining Co.,* 148 U.S. 360, 370, 13 S.Ct. 585,

37 L.Ed. 480 (1893). Failure to examine readily available information will not insulate a plaintiff from having knowledge of this information imputed to him. Nor will this failure excuse ignorance of the results of inquiries that the knowledge would have motivated a reasonable man to conduct. *See, e.g., Wetzel v. Minnesota Ry. Transfer Co.,* 169 U.S. 237, 240–41, 18 S.Ct. 307, 42 L.Ed. 730 (1898) (finding a duty to inform oneself of ownership of land in light of readily apparent facts in the public records that suggested the transfer of the land to another was improper); *Foster v. Mansfield, C. & L.M. R.R. Co.,* 146 U.S. 88, 99–100, 13 S.Ct. 28, 36 L.Ed. 899 (1892) (imputing knowledge of fraud where party, with reasonable diligence, could have learned of the facts suggesting fraud by questioning people readily available to him); *Norris v. Haggin,* 136 U.S. 386, 392, 10 S.Ct. 942, 34 L.Ed. 424 (1890) (imputing knowledge where "the facts out of which [the party] was bound to know th[e] fraud ... were open, were patent, and could not fail to be discovered by any sort of inquiry or investigation"); *Burke v. Smith,* 83 U.S. (16 Wall.) 390, 401, 21 L.Ed. 361 (1872) (imputing knowledge of fraud where records that suggested the fraud were open to inspection and party failed to review them); *Potash Co. of Am. v. International Minerals & Chem. Corp.,* 213 F.2d 153, 155, 101 USPQ 264, 265 (10th Cir.1954) (Patentees "must be diligent and make such inquiry and investigation as the circumstances reasonably suggest, and the means of knowledge are generally equivalent to actual knowledge.").

Consistent with this principle, we have recognized that certain circumstances obligate a patentee to investigate whether infringement is occurring. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,* 988 F.2d 1157, 1162, 26 USPQ2d 1038, 1042 (Fed.Cir. 1993) ("Absent actual knowledge, the facts must support a duty of inquiry."). These circumstances include "pervasive, open, and notorious activities" that a reasonable patentee would suspect were infringing. *See Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1553, 39 USPQ2d 1925, 1928 (Fed.Cir.1996) (constructive knowledge where defendant sold and marketed allegedly infringing products through print advertisements and trade

shows). *See generally* Jean F. Rydstrom, Annotation, *Laches as a Defense in Patent Infringement Suit,* 35 A.L.R. Fed. 551, 577–79, 1977 WL 45665 (1977) (examining cases in which constructive knowledge was imputed to the patentee). Furthermore, constructive knowledge of infringement may be imputed to the patentee even where he has no actual knowledge of the conspicuous activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor. *See A.R. Mosler & Co. v. Lurie,* 209 F. 364, 371 (2d Cir.1913) (barring infringement suit "[w]here owners have remained ... supine for many years, shutting their eyes to what was going on in the art to which the patent belonged"). The patentee who is negligently or willfully oblivious to these types of activities cannot later rely on his lack of knowledge to escape the application of laches because "the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it. Not to improve such opportunity, under the stimulus of self-interest, with reasonable diligence, constitutes laches which in equity disables the party who seeks to revive a right which he has allowed to lie unclaimed from enforcing it, to the detriment of those who have, in consequence, been led to act as though it were abandoned." *Wollensak v. Reiher,* 115 U.S. 96, 99, 5 S.Ct. 1137, 29 L.Ed. 350 (1885).

The availability of laches based on constructive knowledge of the alleged infringer's activities, therefore, imposes on patentees a duty to police their rights to the extent that it is reasonable to do so. This duty is triggered by " 'pervasive, open, and notorious activities' that a reasonable patentee would suspect were infringing." *Wanlass v. General Electric Co.,* 148 F.3d at 1338 (Fed.Cir. 1998), or, in the words of the opinion and the concurrence in this case, "when publicly available information about [a product] should have led [the patentee] to suspect that product of infringing." The panel agrees, therefore, as to when the duty arises, but disagrees about whether it arose in this case.

Assuming that Wanlass was indeed inactive in the air-conditioning industry from 1982 until 1992, it admits that it has always known that air conditioners are the type of product that uses single-phase motors, whose efficiency would increase through the use of the patented invention. Wanlass also admits that, although it tested some motors for infringement between 1977 and 1982, it did not test any kind of motor between 1982 and 1992, and did not test a Fedders product until 1995. Uncontradicted evidence shows that the only way to determine whether a motor infringes is to test it directly with electrical equipment and study the waveforms with an oscilloscope and that circuit diagrams of the motor alone do not provide adequate information from which to determine infringement. There is no dispute that since 1973 Fedders has openly made, sold, and marketed compressors containing single-phase, split capacitor motors whose circuit configuration was the same as that of the allegedly infringing motors. Undisputed evidence also reveals that Wanlass was aware of Fedders' products since at least 1982.

Wanlass argues that there is no evidence that Fedders' pre–1992 motors infringed and, as a result, the court erred in inferring that Wanlass should have known of the potentially infringing activities before the critical date. The circuit diagram submitted to Underwriters Laboratories qualifies, however, as *prima facie* evidence that the accused products, the Model C81B compressors, have motors whose design is substantially similar to those produced in 1973. Because Wanlass did not test a Fedders product until 1995, there is no test data in the record to support Wanlass' argument that Fedders' pre–1992 motors operated substantially differently than later models. Wanlass relies instead on deposition testimony by a Fedders' witness, who stated that Model C81B compressors use two different types of motors with operating characteristics that are not identical, to support an inference that the pre–1992 motors differed significantly from the accused products. This testimony says absolutely nothing about pre–1992 motors because the Model C81B compressor entered the market in 1992. Although another Fedders' witness stated that the size of the capacitors in the motors has changed since 1973, this testimony reveals nothing about the operation of the pre–1992

motors or the significance of changing the capacitor size. Wanlass argues without support that the changes were significant. However, "[t]here must be sufficient substance, other than attorney argument, to show that the issue requires trial." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1562, 33 USPQ2d 1496, 1504 (Fed.Cir.1995).

The circuit diagram submitted to Underwriters Laboratories is the only evidence of record that is probative of the pre–1992 motors. Although this diagram alone does not establish infringement, it does reveal a certain level of information about the pre–1992 motors. Because Wanlass failed to offer evidence to dispute this information, there is no genuine issue of material fact as to whether the Model C81B compressors have motors whose design is substantially similar to those produced in 1973. Therefore, Fedders' activities of extensively making, selling, and marketing compressors (thereby providing the public with information and the means to acquire additional information about its products) since 1973 are sufficiently pervasive, open, and notorious to give rise to a duty to investigate for infringement.

The court finds a genuine issue of material fact in whether it would have been too burdensome for Wanlass to test Fedders' products based on an inference that Wanlass would have had to test an unknown number of motors. Notwithstanding Mr. Wanlass' conclusion that identifying potentially infringing products is a "formidable task," the record reflects that Wanlass easily located an allegedly infringing Fedders' motor once it tried. Furthermore, undisputed evidence shows that testing products for infringement requires no special equipment, and the test itself takes less than two hours. Testing for infringement is easy and Wanlass knew that the only way to determine whether a motor infringes is through actual testing. To preserve its right to enforce its patent, Wanlass had a duty to examine motors from time to time to determine whether they used capacitors in an infringing way. Testing motors in the late 1970's did not discharge this continuing duty. Although the frequency with which Wanlass should have conducted in-

fringement investigations is a function of their cost and difficulty, *cf. Potash,* 213 F.2d at 159–60, 101 USPQ at 269 (applying laches where the inspection necessary to determine infringement "was a comparatively simple matter," but the patentee delayed the inspection for six years and the suit an additional three years), I cannot agree with the court that a genuine issue of material fact exists as to whether Wanlass' conduct in these circumstances was reasonable. In my view, no reasonable fact finder could conclude that it is reasonable to conduct no investigation of any type of motor for over ten years, when testing products is as easy and important as it is here.

Because the undisputed evidence shows that Fedders' motor design has remained substantially the same since 1973 and Wanlass knew of Fedders' products since at least 1982, the district court correctly charged it with the knowledge that inspecting these products would have yielded. If Wanlass had performed a simple test on a single Fedders' product before the critical date, it would have known of Fedders' possible infringement. Therefore, it reasonably should have known of the possible infringement and the trial court properly applied the laches presumption of prejudice.

Wanlass has failed to rebut this presumption because it did not offer credible evidence that Fedders suffered no prejudice. Undisputed evidence shows that witnesses are deceased and unavailable, and that the memories of available witnesses, particularly Mr. Wanlass himself, have faded. Therefore, Fedders undoubtedly suffered evidentiary prejudice as a direct result of Wanlass' delay in bringing suit.